**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PUEBLO OF POJOAQUE,

        Plaintiff,

v.                                                                                             No. CIV 03-713 BB/LFG

GALE A. NORTON, Secretary of the United
States Department of the Interior, et al.,

        Defendants.

## **MEMORANDUM OPINION**

      This matter comes before the Court on a motion to dismiss filed by Defendants (Doc. 11). The Court has considered the submissions and arguments of the parties, as well as the applicable law. Having done so, the Court will GRANT the motion to dismiss, for the reasons stated below.

      **Summary of Facts**

      Plaintiff Pueblo of Pojoaque operates a gambling casino on pueblo land near Santa Fe. In 1997, Plaintiff entered into a compact with the State of New Mexico, under which Plaintiff agreed to pay the State a share of its earnings from the casino. This compact was submitted to the Department of Interior for approval, disapproval, or non-action, pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.* The then-Secretary of the Department declined to approve or disapprove the compact, and the compact therefore took effect to the extent it is consistent with the provisions of the IGRA. 25 U.S.C. § 2710(d)(8)(C). Plaintiff made some of the revenue-sharing payments required by the compact, and then declined to make any further payments. Eventually the State filed a still-pending lawsuit against Plaintiff in this Court. Subsequently, Plaintiff

filed the instant lawsuit against Defendants. Plaintiff maintains that Defendants have an unwritten and unpublished policy allowing revenue-sharing to occur between tribes and states, with respect to gaming compacts. Plaintiff contends this policy was adopted in violation of the Administrative Procedures Act ("APA"), is contrary to the requirements of the IGRA, and violates Defendants' trust duty toward Plaintiff. Plaintiff therefore seeks to have this policy overturned. Plaintiff maintains this lawsuit is not intended to challenge Defendants' inaction concerning the 1997 compact, but is aimed solely at the revenue-sharing policy adopted by Defendants. As discussed below, however, Plaintiff also makes contradictory statements in its pleadings, as to whether this case actually includes an attack on the 1997 compact itself.

**Standard of Review**

Defendants have moved to dismiss this case for failure to state a claim and for lack of jurisdiction. In addressing such a motion, the Court must accept all well-pleaded facts as true. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir.2002). A motion to dismiss may be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling it to relief under the claimed theory of recovery. *Id.* The Court must view all reasonable inferences in favor of Plaintiff, and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether Plaintiff will prevail, but whether Plaintiff is entitled to offer evidence to support its claims. *Id.* In this case, Plaintiff attached a document to the complaint and quoted from materials outside the complaint in its brief. Consideration of these items does not convert this motion to a motion for summary judgment, as they are either referred to in the complaint or are subject to judicial notice. *See Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999) (district court may consider materials referred to in complaint, or attached to complaint, without converting motion to

dismiss into motion for summary judgment); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (court may consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment). The Court will address Defendants' motion with these principles in mind.

**Discussion**

**Procedural Challenge to Policy:** For purposes of this opinion, the Court assumes, as it must, that Defendants did have an unwritten, unpublished policy allowing states and tribes, under certain circumstances, to enter into compacts providing for payment of a share of a tribe's casino revenues to a state. The policy is alleged, generally, to be as follows: Defendants will approve revenue-sharing payments to a state only if the state grants a tribe or tribes "substantial exclusivity" as to gaming in the area where the tribe operates, by not allowing significant competition from non-Indian gaming operators. Plaintiff's first challenge to this so-called revenue-sharing policy is a procedural challenge under the APA. Plaintiff argues that a policy such as this must be promulgated only after Defendants follow the rulemaking procedures contained in the APA. *See* 5 U.S.C. § 553. Plaintiff's procedural challenge fails as a matter of law, for at least the two reasons discussed below.

The rulemaking requirements of § 553 do not apply to "interpretative rules" or "general statements of policy." § 553(b)(A). The Court finds the revenue-sharing policy at issue in this case to be a general statement of policy or, at most, an interpretive rule, and therefore not subject to the rulemaking provision. A general statement of policy issued by an administrative agency has been described in several ways by the courts. It is a statement that advises the public of the manner in which the agency proposes to exercise a discretionary power; it does not impose any rights or

obligations on any person or entity; and it leaves the agency free to exercise its discretion with respect to the matter at hand. *American Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993); *American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046 (D.C. Cir. 1987); *see also Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) (policy statement does not seek to impose or elaborate or interpret a legal norm, but merely represents an agency position as to how it will treat the governing legal norm). The revenue-sharing policy fits these criteria. It does not establish or impose any rights or obligations on any party; it leaves the agency free to exercise its discretion in approving, disapproving, or refraining from acting with respect to compacts between tribes and states; and it merely describes the manner in which the agency will exercise that discretion. The policy does not purport to define "substantial exclusivity" or impose any other specific restrictions on compacts, but merely explains that Defendants will not approve a compact if, in Defendants' discretion, the compact does not meet this general requirement.[1] As such, the policy is a non-binding declaration of the agency's views, and is not subject to the rulemaking requirements of § 553.

In the alternative, if the policy is considered a rule rather than a statement of policy, it is an interpretive rule rather than a legislative or substantive rule. Interpretive rules, unlike substantive rules, are not subject to the rulemaking provisions of § 553. *American Mining Congress*, 995 F.2d 1108-09. An interpretive rule is one which provides the agency's construction of the statutes and rules it administers. *Id.* A substantive rule, on the other hand, is a rule that implements a statute and has the force and effect of law. *Id.* The policy in this case is an attempt to interpret the portion of

---

[1]The Court recognizes that this lack of specificity or definition is one of the complaints Plaintiff has about the revenue-sharing policy. However, as the Court's opinion explains, there is no legal basis establishing Plaintiff's right to such specificity or definition.

4

the IGRA that prohibits a state from imposing a tax, fee, charge, or other assessment upon a tribe engaging in class III gaming. 25 U.S.C. § 2710(d)(4). Defendants have generally described how they will decide whether a revenue-sharing agreement is permissible or not under the restriction imposed by this provision of the IGRA. However, the policy does not have the force and effect of law, and does not implement the statute in the sense that it does not attempt to establish a binding rule carrying out the intent of the statute. Therefore, the policy is at most an interpretive rule, and is not subject to the rulemaking requirements of § 553. *Syncor; American Mining Congress; Bowen*.

A second reason Plaintiff's procedural challenge fails is that Plaintiff's argument rests on the faulty premise that Defendants were required to construct the revenue-sharing policy through the rulemaking process rather than by arriving at the policy following a series of case-by-case informal adjudications. It is undisputed, as Plaintiff's own materials establish, that Defendants have applied the general "substantial exclusivity" position to a number of tribal-state compacts over a period of years, in deciding whether to approve or disapprove the compacts containing revenue-sharing agreements. [Complaint, Exh. A, draft interpretive rule, pp. 1-4; Resp. Brief, p. 3, testimony of Aurene Martin] Defendants have therefore chosen to determine, on a case-by-case basis, whether each compact is in accord with the IGRA's requirements, including the prohibition against any tax, fee, or charge discussed above. Plaintiff would prefer that Defendants engage in the rulemaking process and establish a binding set of rules and regulations concerning revenue-sharing agreements. However, in applying a statute and setting policy an agency has broad discretion to choose between rulemaking and case-by-case adjudication. *Michigan v. EPA*, 268 F.3d 1075, 1087 (D.C. Cir. 2001); *American Airlines, Inc. v. Dep't of Transp.*, 202 F.3d 788, 797 (5th Cir. 2000);  Vol. I, Pierce, Richard J., *Administrative Law Treatise*, § 6.9, pp. 382-86 (4th Edit. 2002) . This is especially true

here, where Congress has explicitly chosen not to make Defendants the final arbiter of the acceptability of tribal/state compacts but instead has allowed Defendants the choice of opting out of the decision. Absent a compelling reason to require Defendants to engage in rulemaking, which does not exist in this case, Plaintiff has no legal right to force Defendants to undergo that process.

**Challenge to Merits of Policy:** Plaintiff contends the revenue-sharing policy violates the IGRA's prohibition of the imposition of any tax, fee, or charge by a state, in entering into a compact with a tribe. Plaintiff therefore wants to obtain judicial review of this policy and have it reversed, presumably with a holding that would prohibit any revenue-sharing whatsoever, except for the fees states are specifically allowed to charge under the IGRA. § 2710(d)(3)(C). For the reasons discussed below, this Court may not review the merits of the revenue-sharing policy in this case.

Plaintiff attempts to limit this case to consideration of the revenue-sharing policy in the abstract, and separate it from Defendants' application of the policy in reviewing Plaintiff's compact with the state. The problem with this position is that the policy, standing alone, is not a final agency action reviewable under the APA. Two prerequisites for obtaining judicial review under the APA are: (1) the existence of a final agency action; (2) for which there is no other adequate remedy in court. *Colorado Farm Bureau v. United States Forest Service*, 220 F.3d 1171, 1173 (10th Cir. 2000). To decide whether an agency action is final, the Court must look to whether the impact of the action is direct and immediate, and marks the consummation of the agency's decisionmaking process. *Id.* In addition, the agency action must be one by which rights or obligations have been determined, or from which legal consequences will flow. *Id.*, 220 F.3d at 1174. Defendants' revenue-sharing policy, in the abstract, meets none of these criteria. The impact of the policy is not direct and immediate until it is applied to the review of a particular compact. Similarly, the policy alone does not mark the end

of the agency's decisionmaking process. It is also clear that the mere existence of the policy does not determine any rights or obligations, and no legal consequences flow from the policy in the abstract. Again, it is not until the policy is applied, and a particular compact approved or disapproved, that a final agency action can be said to have occurred. For this reason, Plaintiff cannot obtain judicial review of the policy, standing alone, under the APA.[2]

Despite Plaintiff's avowal that it seeks review only of the policy itself, and not of Defendants' application of that policy to Plaintiff's particular compact, the Court will determine whether Plaintiff may obtain APA review of Defendants' actions with respect to Plaintiff's compact. This is because it is clear Plaintiff's goal in this lawsuit is to obtain a ruling invalidating the 1997 compact. Plaintiff is attempting to do so by obtaining a ruling stating that the revenue-sharing portions of the compact are in violation of federal law. Furthermore, although Plaintiff claims the lawsuit is not challenging Defendants' discretion to approve the 1997 compact, disapprove it, or allow it to take effect through inaction, Plaintiff also states that the lawsuit is a challenge to Defendants' use of the revenue-sharing policy in reviewing the 1997 compact. These contradictory statements, as well as the fact that Plaintiff's complaint is ultimately directed at invalidating the 1997 compact, require the Court to address the question of whether Defendants' actions (or inactions) regarding the 1997 compact are subject to judicial review under the APA. The answer, for several reasons, is that they are not.

---

[2]Plaintiff maintains it suffered concrete harm from the mere existence of the policy, because it negotiated a compact with the State without knowing the terms of the policy. Plaintiff has not explained why it was legally entitled to know the substance of Defendants' policy prior to negotiating the compact with the State. Moreover, since the policy is applied on a case by case basis, Plaintiff could not have been certain of its application while negotiating. Finally, even if Plaintiff did suffer harm from the mere existence of the policy, that fact cannot mutate the policy into a final agency action reviewable under the APA.

The IGRA explicitly grants Defendants discretion to do one of three things when asked to review a tribal-state compact. Defendants may approve the compact; disapprove the compact; or take no action with respect to the compact. 25 U.S.C. § 2710(d)(8). If the last option occurs, the compact is deemed to be approved, but only to the extent it is consistent with the provisions of the IGRA. *Id.* As to Plaintiff's 1997 compact, Defendants chose this course--the compact was not approved or disapproved within the 45 days provided by the statute, and was deemed approved by operation of law. In refusing to either approve or disapprove the compact, Defendants were exercising the explicit discretion granted by Congress in the IGRA.

Although there is a strong presumption that agency action is judicially reviewable, the APA provides an exception where agency action is committed to the agency's discretion by law. *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998); *McAlpine v. United States*, 112 F.3d 1429, 1432 (10th Cir. 1997). An agency's action is considered to be committed to the agency's discretion where the statute authorizing the action is drawn so broadly that a reviewing court would have no meaningful standard against which to judge the action, because there is no law to apply to the action. *Id.* In this case, the IGRA does provide limitations on Defendants' ability to *disapprove* a compact--a compact may be disapproved only if the compact violates any provision of the IGRA, any other provision of federal law, or the trust obligations of the United States toward Native Americans. § 2710(d)(8)(B). Had Defendants chosen to disapprove the 1997 compact, therefore, there might be law to apply to their decision and judicial review might be available. However, Defendants did not approve or disapprove the compact, and the IGRA grants Defendants complete, unfettered freedom to refrain from such approval or disapproval. Therefore, Defendants' decision

8

to withhold an administrative order either approving or disapproving the 1997 compact is not reviewable under the APA.

Another reason Defendants' inaction with respect to the compact is unreviewable is that Plaintiff has an adequate remedy at law. As pointed out previously, one of the prerequisites for obtaining judicial review under the APA is the unavailability of any other adequate remedy for the agency's actions. *Colorado Farm Bureau, supra.* In this case the ultimate remedy sought by Plaintiff is a determination that the 1997 compact is invalid, because the revenue-sharing provisions of that compact violate the IGRA. However, Plaintiff has the ability to raise that argument as a defense in the pending lawsuit filed against Plaintiff by the State, and in fact Plaintiff has done so. [Answer and Counterclaim, CIV 00-851] Plaintiff therefore has an adequate alternative forum in which to litigate its claim that the IGRA does not allow the type of revenue-sharing contained in the 1997 compact, and may not obtain judicial review of Defendants' decision to refrain from disapproval of the compact.[3]

A final reason Plaintiff may not litigate the merits of Defendants' actions with respect to the 1997 compact in this lawsuit is the fact that the State is an indispensable party to litigation challenging the validity of the compact, and has declined to waive its sovereign immunity for purposes of this case. The Court's analysis of the factors that must be considered in making a determination of indispensability leads to the conclusion that the State is an indispensable party to this lawsuit. *See*

---

[3]The Court recognizes Plaintiff's argument that in the lawsuit filed by the State, Plaintiff cannot litigate the propriety of Defendants' revenue-sharing policy itself. However, as discussed above, Plaintiff does not have the right to litigate the merits of that policy in the abstract. Therefore, Plaintiff does have an adequate alternative forum in which to litigate the only issue it has the right to litigate with respect to the 1997 compact, which is whether the compact's revenue-sharing provisions comport with the requirements of the IGRA.

9

*Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411-12 (10th Cir.1996) (in addition to finding that the party is a necessary party, the court should examine at least the following non-exclusive factors to determine indispensability of a party: the extent to which a judgment rendered in the person's absence might be prejudicial to the person; the extent to which that prejudice can be lessened or avoided; whether a judgment rendered in the person's absence will be adequate; and whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder).[4]

As a party to the compact, which is contractual in nature, the State's interests will clearly be harmed if the revenue-sharing provisions contained in the compact are declared invalid. *See Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1556 (10th Cir. 1997) (IGRA compact is a form of contract); *Enterprise Mgt. Consultants, Inc. v. United States*, 883 F.2d 890, 893 (10th Cir.1989) (Indian tribe is a necessary party to an action seeking to validate a contract with the tribe). There is Tenth Circuit authority for the proposition that a party to a contract is almost always an indispensable party to a lawsuit attacking the validity of the contract. *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 & n. 5 (10th Cir.1987) (citing Ninth Circuit opinion suggesting a rule that a party to a contract is per se indispensable to litigation affecting it, *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir.1975)). On an analogous claim, the District of Columbia Court of Appeals has held that the State of Kansas was an indispensable party to the Kickapoo Tribe's lawsuit against the Secretary of the Interior, where the Tribe's lawsuit was an effort to validate a compact purportedly entered into by the Tribe and the governor of Kansas, under the IGRA. *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1500 (D.C. Cir. 1995).

---

[4]There can be no dispute in this case that the State is a necessary party, because it claims an interest in the action (the viability of its 1997 compacts with Plaintiff and other tribes) that will be seriously impacted if Plaintiff's lawsuit is successful. *Cf. Rishell.*

A judgment rendered in the State's absence, in effect invalidating the 1997 compact, will clearly be prejudicial to the State; there is no way to lessen or eliminate that prejudice; and as discussed above, Plaintiff has an adequate remedy, in the form of an alternative forum in which to litigate the issue it seeks to raise in this lawsuit. The Court therefore finds the State is an indispensable party to this lawsuit, and is not amenable to joinder because it has not waived its sovereign immunity.[5] Dismissal of this case is appropriate for this reason as well. *Kickapoo Tribe*.

**Trust Responsibility:** Plaintiff has alleged, without explanation, that Defendants' revenue-sharing policy is a violation of its trust duty toward Plaintiff. However, Plaintiff has not provided any argument as to how this might be true. Furthermore, for the reasons discussed above, Plaintiff cannot maintain such a challenge to the policy in this lawsuit, either in the abstract or as applied to the 1997 compact.

**Conclusion:** Although Plaintiff has attempted to limit this lawsuit to a challenge to Defendants' revenue-sharing policy in the abstract, such a challenge is not legally viable either on the procedural grounds raised by Plaintiff or on the merits. Furthermore, the application of the policy

---

[5]The Court notes Plaintiff's reliance on two Tenth Circuit cases holding that tribes were not indispensable parties to lawsuits attacking decisions of the Department of Interior and the National Indian Gaming Commission, and directly affecting the tribes' interests. *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001); *Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250 (10th Cir. 2001). In both of those cases, the Tenth Circuit relied heavily on the fact that other parties to the cases had substantially the same interests as the tribes, and would be able to protect the tribes' interests. In this case, however, Defendants did not determine that the revenue-sharing provisions of the 1997 compact are valid, and so do not have any interest in litigating the State's position that those provisions are indeed valid. Furthermore, in this case Plaintiff has an alternative forum in which to litigate its claim, unlike the plaintiff in *Sac & Fox*. Finally, the *Kansas* opinion specifically distinguishes a case, such as this one, in which the validity of a particular gaming contract is at issue. 249 F.3d at 1227, n. 9. For these reasons, the Court does not find these cases persuasive.

to Plaintiff's 1997 compact also may not be litigated in this action. Therefore, the Court will grant Defendants' motion to dismiss.

Dated this 10th of February, 2004.

BRUCE D. BLACK
United States District Judge

**Attorneys:**

**For Plaintiff:**
Frank Demolli

**For Defendants**
Phyllis Dow
Edward Passarelli